UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MONROE POSEY, #257373,

        Petitioner,

                            CASE NO. 2:08-CV-15226

v.                          HONORABLE STEPHEN J. MURPHY, III

BLAINE C. LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

**INTRODUCTION**

Petitioner Mark Monroe Posey ("Posey"), a state prisoner currently confined at the Ryan Correctional Facility in Detroit, Michigan,[1] has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Posey was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne County Circuit Court. In 2005, he was sentenced to life imprisonment without the possibility of parole on the murder conviction, a concurrent term of three to five years on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

---

[1] At the time he instituted this action, Posey was confined at the Boyer Road Correctional Facility in Carson City, Michigan where Respondent Blaine Lafler is the warden.

In his pleadings, Posey raises claims concerning the admission of two hearsay statements, his right of confrontation, and the sufficiency of the evidence. Respondent Blaine Lafler, through the Michigan Attorney General's Office, has filed an answer to the petition contending that it should be denied for lack of merit. For the reasons stated, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability.

## FACTS AND PROCEDURAL HISTORY

Petitioner Posey's convictions arise from the shooting death of Daniel Dion George on Tacoma Street in Detroit, Michigan on October 3, 2005. The Court shall accept Posey's statement of facts, to the extent that they are consistent with the record, as Respondent has done the same and not disputed them. The relevant trial facts are as follows:

> On March 31, 2006, a hearing was conducted pursuant to the prosecutor's motion to admit two statements allegedly made by the decedent a month before the shooting. In one, Appellant allegedly complained to George in the presence of George's girlfriend that some of his narcotics were missing, and that he would kill whoever had taken it. In the other, George allegedly told his sister that if anything happened to him, Appellant would be responsible. Both were admitted.
>
> On April 3, 2006 Appellant appeared for trial. Following jury selection, preliminary jury instructions, and opening statements, the following evidence was presented:
>
> Tiffany Berry testified that she knew Daniel Dion George and his girlfriend, Willeen "Kittie" Parks. At 10:00 p.m. October 3, 2005 she saw George at a liquor store. He followed her to her sister's house. She parked her car, got into his SUV and rode with him to Tacoma Street between Monarch and Queen Streets. They went to a drug house for 10 or 15 minutes and then drove a few houses away. He parked at the curb, made a call, asked for a person named "Po" and stated that he was outside. According to Berry, a person she identified as Appellant came to driver's door and had a brief conversation with George regarding the loss of a sack (of narcotics). Three other men came from Monarch Street. One approached the passenger side of the vehicle. The other two approached the driver's side. She then heard shots fired from the driver's side. She did not see a weapon. Berry ran toward Monarch Street to a house around the corner and had the resident call the

2

police. She acknowledged that she had identified Appellant in her second statement to the police and in her preliminary examination testimony, but maintained that they were incorrect, and that her initial statement and her trial testimony were truthful.

Outside the presence of the jury, Ms. Berry was than taken into custody on order of the trial judge, who reasoned that she had lied under oath, either at the preliminary examination or at trial. Later, the court decided against contempt proceedings, but referred the matter to the prosecutor's office to consider perjury charges.

Willeen Parks-Campbell testified that George was her boyfriend and the father of her daughter. She stated that in late June, 2005, Appellant and George began to sell drugs out of George's house on Tacoma along with a person named "Lemon". At first the relationship seemed amicable, but that George and Appellant began to argue over missing drugs, the type of drugs to be sold and sales commissions. According to Campbell, Appellant once stated that if he ever found out who had taken his drugs, he would kill that person. She also stated that George once told her if anything happened to him, she was to "get" Appellant and Lemon.

Meco Blanton stated that he knows Appellant and George. At 9:00 or 9:30 p.m. October 2, 2005, he was at the Tacoma drug house. George arrived with a female. The two remained for 20 or 25 minutes. After they left, Appellant arrived. Blanton then received a call from George, stating that he was in front of the house and asking Blanton to send Appellant out to speak with him. Appellant left the house. Three or four minutes later, Blanton heard gunshots in front of the house. He ran outside and saw George's vehicle. The passenger door was open. George leaning over the driver's seat bleeding. Appellant was running across the street. He pointed toward Monarch Street and said to Blanton "They ran that way". He then told Blanton that two black males with guns wearing black hoodies came up when he was by the truck and started shooting. Blanton did not see Appellant with a weapon and did not see any blood on him.

Detroit Police Officer Karen Miller is the officer in charge of the case. On October 4,2005, she interviewed Tiffany Berry. At that time, she stated that three men approached the vehicle. She stated that she did not see the shooting and that she did not see the gun. October 6, 2005, Miller interviewed Meco Blanton and Appellant. She obtained a statement from Appellant, which she reduced to writing. Appellant related that he came out to George's truck after George called Blanton. As he spoke with George, three black men approached from Monarch. Two of them went to the back of the vehicle. The third stood near a tree. A man came from the left rear with a gun in his hand. He reached under Appellant and fired one shot. Appellant ran toward Monarch. He heard five of six more shots. When he looked back, he saw the men running toward Queen. On December 17, 2005, Miller

3

interviewed Tiffany Berry. According to Miller, Berry tearfully identified Appellant as the shooter. Miller stated that Appellant was arrested December 17, 2005, before Berry's identification, based upon other information. She acknowledged that Appellant's description of the shooting was similar to the scenario first reported by Berry.

Lynda Brown stated that the decedent was her brother, that she knew Appellant as a friend of her brother and that the two were using her brother's house to sell narcotics. According to Brown, her brother told her in late September, 2005 that he was feuding with Appellant over narcotics, and that if anything happened to him, she should kill Appellant.

Detroit Police Officer Richard Arslanian stated that on October 3, 2005, he was dispatched to Tacoma Street and arrived at 11:20 p.m. When he arrived, a person later identified as Daniel Dion George was slumped over in the front seat of the vehicle. The engine was running and the door was closed. He observed gunshot wounds to the neck and left arm, a casing on the front passenger floorboard and a cellular telephone on the passenger seat. Arslanian secured the scene. He was present when EMS removed the body.

Detroit Police Officer Carlos Chapman arrived as emergency medical technicians were placing the body in an ambulance. He followed them to St. John's Hospital get a condition report and take possession of the victim's property. He received clothing and removed suspected cocaine from a pocket. He placed the items in evidence and they were taken to Homicide. Detroit Police Officer Troy Debets stated that on December 17, 2005, he arrested Appellant at 13903 Tacoma. Appellant was cooperative and unarmed.

Detroit Police Officer Thomas Smith is an evidence technician. He arrived at 1:10 a.m. October 4, 2005 to collect evidence and to photograph and diagram the scene. The victim had already been removed from the vehicle and both doors were open. He recovered a fired bullet and a spent shell casing from the lower portion of the driver's seat, a fired bullet from the lower portion of the front passenger seat. On the front passenger floor he found another spent casing and a cellular telephone. On the ground outside the passenger door was a white purse. There was suspected blood on the passenger seat and center console. He searched from the vehicle to both ends of the block but found no more bullets or shells.

Detroit Police Officer Kevin Reed was qualified as an expert in firearms and toolmark identification. He compared the two 380 fired cartridge casings recovered from the vehicle and determined that they were both fired from the same weapon. He also compared the two 380 metal jacketed bullets recovered from the vehicle as well as the two 380 metal jacketed bullets recovered by the medical examiner from the decedent and determined that all four were fired by the same weapon. Without the gun, he was unable to

determine whether the gun which fired the casings also fired the bullets, although they were compatible.

William Steiner is a civilian employee of the Detroit Police Department, working as a forensic chemist in the crime lab. He was qualified as an expert in forensic chemistry. Steiner examined a shirt recovered from the decedent and determined that it tested positive for blood. Next, he located two bullet holes through the left sleeve, one at the left underarm and one on the left side of the upper abdomen. He then tested the shirt for evidence of close range firing. He found none. He agreed that the bullet holes were consistent with a person in the driver's seat being shot by a person standing outside the driver's door, and that under those circumstances, the distance between the shooter and the victim would be too far to leave evidence of close range firing. Steiner also examined a pair of blue denim shorts. He found blood but no bullet holes.

Leigh Halvaty is an Assistant Wayne County Medical Examiner. She was qualified as an expert in forensic pathology. Dr. Halvaty stated that on October 5, 2005, she performed an autopsy on the body of 23-year-old Daniel Dion George and concluded that he died of multiple (7) gunshot wounds. In no particular order, one bullet entered the front of the left neck and left chest. It passed from front to back, left to right and moderately downward, ending up in the right flank where it was removed and retained, A second bullet entered the left chest, passed from front to back, left to right and slightly downward. It too was recovered from the right flank. Wounds three and four were graze wounds. Number three grazed the left lower chest. Number four grazed the left upper abdomen. She could not determine the direction these bullets traveled. Wounds five, six and seven were through and through. Number five entered on the lateral side of the left upper arm. There was a corresponding exit wound on the inner portion of the left upper arm. Number six entered on the lateral aspect of the left forearm, just below the elbow. There was a corresponding exit wound on the front of the left forearm, just below the elbow. Number seven entered the back of the left forearm. There was a corresponding exit wound on the front inner aspect of the left forearm. If the body was moving, one bullet could have created more than one injury. For example, the bullet which exited the left upper arm could have then reentered the left chest. She did not know how many times he was shot. It would have been at least four but no more than seven. There was no evidence of close range firing. In her opinion, the manner of death was homicide.

The parties stipulated that Appellant had previously been convicted of a specified felony and that less than three years had passed since all fines were paid, all imprisonment was served or all terms of probation were completed.

The court also ruled on an earlier request and granted the prosecutor's

motion to admit transcripts of Tiffany Berry's preliminary examination testimony. The People rested, and defense counsel's motion for directed verdict of acquittal was heard and denied. The defense then rested.

Following closing arguments and final jury instructions, Appellant was found guilty as charged. On April 20, 2006, he was sentenced to concurrent terms of life imprisonment for count one and three to five years for count two, consecutive to a term of two years for count three.

Pet. Brf., pp. 2-6 (citations omitted).

Following his convictions and sentencing, Posey filed an appeal as of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The Michigan Court of Appeals affirmed his convictions and sentence. *People v. Posey*, No. 270379, 2007 WL 1932022 (Mich. Ct. App. July 3, 2007) (unpublished per curiam). Posey then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Posey*, 480 Mich. 894, 738 N.W.2d 723 (2007).

Posey thereafter filed the present petition, raising the following claims:

I. Petitioner's rights to a fair trial and to confrontation were violated by the repeated introduction of two hearsay statements allegedly made by the decedent the month prior to the shooting that if anything happened to him, they should "get" or "kill" the petitioner.

II. Petitioner's convictions must be reversed where the prosecution failed to present legally sufficient evidence that the petitioner committed the offenses.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit.

## STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Posey filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (internal citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the

7

benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.*; *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## ANALYSIS

A. <u>Admission of Hearsay Statements</u>

Posey first asserts that he is entitled to habeas relief because the trial court violated state law and his rights to a fair trial and to confront the witnesses against him by admitting hearsay testimony at trial. Specifically, Posey objects to testimony from the victim's girlfriend and sister recounting the victim's statements to them that if something happened

to him, they should "get" or kill Posey because he and Posey were having disputes over their drug dealings. The trial court admitted the statements to the extent that they related to Posey's identity, motive, and intent, but not as propensity evidence.

On direct appeal, the Michigan Court of Appeals found that the admission of the hearsay testimony was improper under state law, but that the error was harmless. The court further concluded that the admission of the testimony did not violate the Confrontation Clause because the victim's statements were non-testimonial. The court explained in relevant part:

> The statements at issue here are: (1) a statement by the victim to his [girlfriend] after a confrontation with defendant that, "This is why I bring you around. If anything happens to me you get [them];" (2) the victim's statement to his [girlfriend] after showing her certain addresses that if anything happened to him, "these people did it;" and (3) the victim's statement to his sister that, "[t]hings are getting ugly over on Tacoma Street. I want to get out of the business. I'm fearful. Things are not going well with [defendant.] Each of these statements by the victim plainly pertain to his belief that defendant, in the future, would kill him. Accordingly, the statements were inadmissible under MRE 803(3).
>
> Although the court erred by admitting the victim's statements, reversal is not required. "Evidentiary error will not merit reversal unless it involves a substantial right and, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v. Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003) (citing *People v. Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999)). Given the properly admitted evidence, defendant cannot show that any error was outcome determinative.
>
> The prejudice of the improper statements to defendant is that the "jury would accept [the victim's] statement[s] as somehow reflecting on defendant's state of mind rather than [the victim's], *i.e*, as a true indication of the defendant's intentions, actions or culpability." *White, supra* at 505. However, the prosecution presented testimony relating to defendant's intentions, actions or culpability that is cumulative to the improperly admitted statements. Specifically, there was testimony that defendant would often complain to the victim that bags of crack cocaine were missing, and that defendant did not want to pay the victim his cut for the drugs sold out of the house. Parks-Campbell testified that about one month before the victim was killed, Parks-Campbell, the victim and defendant were sitting in the drug

9

> house and defendant was "ranting and raving" that he was missing a sack of drugs. According to Parks-Campbell, defendant said, "Whenever I find out who took my sack I'm going to kill them." Here, statements relating the victim's belief that defendant may have intended him harm are cumulative to properly admitted evidence showing growing animosity and distrust between defendant and the victim. The properly admitted evidence permits the jury to infer that the relationship between the victim and defendant was becoming increasingly hostile and dangerous. Accordingly, defendant has not shown that admitting the victim's statements was outcome determinative.
>
> Defendant also argues that the admission of the victim's statements violates his Confrontation Clause rights. Confrontation Clause violations may occur where testimonial statements of unavailable witnesses are admitted at trial but the defendant had no prior opportunity to cross-examine the witnesses. *Crawford v. Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). However, in the instant case, the victim's statements were not testimonial. Rather, the statements were informal, made between the victim and his girlfriend and the victim and his sister. Thus, defendant's right to confrontation was not violated.

*Posey*, 2007 WL 1932022 at *3-4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As an initial matter, the Court notes that alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). To the extent that Posey asserts that the trial court erred in admitting the statements under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not

intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).

Moreover, Posey has not shown that the admission of the hearsay testimony rendered his trial fundamentally unfair. As noted by the Michigan Court of Appeals, the testimony regarding Posey's ongoing dispute with the victim and his possible reasons or intention to harm or kill the victim was cumulative to other properly admitted evidence. In other words, any error in admitting the evidence was harmless beyond a reasonable doubt. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (ruling that for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict"); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).

Lastly, Posey is not entitled to relief on his claim that the admission of the statements violated his confrontation rights. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him...." U.S. Const. amend. VI. The Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315 (1973). The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable

11

to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Id.* at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007). The victim's statements to his girlfriend and sister were non-testimonial in nature. *Crawford* is thus inapplicable to the case at hand.

Furthermore, the Supreme Court has made clear that the Confrontation Clause is not implicated, and need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (noting that the Confrontation Clause "has no application to such statements and therefore permits their admission even if they lack indicia of reliability"); *United States v. Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc). Petitioner has not shown that the admission of the challenged testimony violated his confrontation rights or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

    B. <u>Sufficiency of the Evidence</u>

Posey next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. Specifically, he contends that the prosecution failed to establish beyond a reasonable doubt that he was the person who committed the crime.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus

on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See* Mich. Comp. Laws § 750.316; *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998). Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). The elements of felon in possession of a firearm are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See* Mich. Comp. Laws § 750.224f. The elements of felony firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense. *See* Mich. Comp. Laws § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)).

13

It is axiomatic that the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offenses. *See, e.g., People v. Kern*, 6 Mich. App. 406, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967). In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Id*. Direct or circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including identity. *See Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *People v. Johnson*, 146 Mich. App. 429, 381 N.W.2d 740, 742 (Mich. Ct. App. 1985).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim, explaining in relevant part:

> Defendant contends that he was not the person who shot the victim and the prosecution did not present sufficient evidence to establish beyond a reasonable doubt his identity as the killer. Defendant relies on Tiffany Berry's trial testimony that she saw three black men walk past the victim's car before the shooting, and that she did not see defendant with a weapon. However, she also testified at trial that defendant was the only person she saw standing outside of the victim's vehicle when the victim was shot.
>
> Defendant also stresses that Berry's trial testimony, while similar to the statement she initially gave to police, conflicted with the second statement she gave to police and with her testimony at the preliminary examination that defendant shot the victim. Indeed, the record reflects that when she gave police the second statement she said she did not tell the truth in her first statement because she was afraid of defendant. At trial, she did not explain why her version of events had changed back to the initial version she gave to police. Regardless, however, this Court will not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses. *People v. Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004). It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v. Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Thus, assuming that the jury chose to believe Berry's version of events that defendant killed the victim, the evidence establishes that defendant was the killer.

14

> Further, Parks-Campbell testified that she witnessed almost daily bickering between defendant and the victim over drugs and money. The parties' contentious relationship before the victim's murder is evidence of defendant's premeditation and deliberation. *Abraham, supra*, at 656. At one point, Parks-Campbell heard defendant say that he would kill whoever it was that stole his drugs. One who states an intention to act is more likely to have acted in conformance with that intention. *Brownridge, supra* at 305. On the night of the murder, Berry heard defendant tell the victim that yet another sack of his drugs had come up missing. We find that the ongoing arguments, combined with defendant's statement that he would kill whoever stole his drugs, would establish defendant's premeditated intent to kill.
>
> Here, the prosecution also presented evidence that, on the night of the murder, the victim called Meco Blanton and told Blanton to tell defendant to come out of the house to talk to him. Defendant left the house, and shortly thereafter, Blanton heard gunshots. Blanton testified that defendant told him two black males in hoodies had come up to the Blazer and started shooting. Blanton testified that defendant said he ran away before the victim was shot because he saw that the two men had guns. However, when questioned by police, defendant claimed that one of the men came up to him from behind the Blazer and reached under him and shot the victim. Defendant told police that he ran toward Monarch Street and that he saw the three men run toward Queen Street, but Blanton testified that defendant indicated that the perpetrators ran toward Monarch Street. Defendant described the three men but did not say that they were wearing black hoodies, which contradicted what he told Blanton. Defendant's conduct after the murder involving contradictory versions of the events he gave to police and Blanton is a factor pointing to his guilt. *Abraham, supra* at 656. Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence for a rational trier of fact to find defendant guilty beyond a reasonable doubt of first-degree murder, felon in possession of a firearm, and felony-firearm.

*Posey*, 2007 WL 1932022 at *1-2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Willeen Parks-Campbell testified about the disputes between Posey and the victim over their drug business and Posey's statement that he would kill whoever was cheating him. Tiffany Berry testified that Posey confronted the victim outside the drug house, that Posey was standing by the driver's door of the car, that other men approached and she heard gunshots. Berry, however, also admitted that she had previously told the police and testified at the preliminary examination that she saw

15

Posey pull out a gun and shoot the victim. Meco Blanton corroborated much of Berry's testimony about the events leading up to the shooting. Although he did not see the shooting, he heard the gunshots, ran outside, and saw Posey running across the street (and indicating that other men had fled the area). Police testified about inconsistencies in Berry's statements and Posey's own statements concerning the shooting. While not overwhelming, such evidence, if believed, was sufficient to establish that Posey was the person who committed the shooting.

Posey's insufficient-evidence claim challenges the credibility of the testimony and the inferences the jury drew from the evidence presented at trial. It is well-settled, however, that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, a rational trier of fact could have found the elements of the charged offenses beyond a reasonable doubt. More importantly, for purposes of federal habeas review, the Michigan Court of Appeals' decision to that effect is not unreasonable. Habeas relief is not warranted on this claim.

## CONCLUSION

For the reasons stated, the Court concludes that Petitioner Mark Monroe Posey is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court will deny the petition for a writ of habeas corpus.

A. <u>Certificate of Appealability</u>

Before Posey may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claim. *Id.* at 336-37. Having considered the matter, the Court concludes that Posey has failed to make a substantial showing of the denial of a constitutional right as to his claims. Accordingly, the Court will deny a certificate of appealability.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that defendant's petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 12, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 12, 2011, by electronic and/or ordinary mail.

                                                Carol Cohron
                                                Case Manager